Good morning. We have called my first case. It's 24-2234 Jeffboat v. Director, Office of Workers' Compensation Programs. And, Council Marks, you may approach the lectern. Thank you. Before we proceed, I want to make sure, Council, remotely, you're able to hear us okay? I am. Thank you, Your Honor. All right. Thank you. May I proceed? You may. May it please the Court, good morning, Your Honors. My name is Kevin Marks, and I represent the appellants in this case, Jeffboat, Incorporated and the American Longshore Mutual Association, which goes by the trade name of ALMA. We're here today appealing a decision which was made under the Longshore and Harbor Workers' Compensation Act by the Department of Labor. The decision at the trial level, or what we call in longshore parlance the formal hearing, is made by an administrative law judge, and it was affirmed last year by the Department of Labor's Benefits Review Board. We maintain, Your Honors, that the decision was clearly wrong, and we ask that it be reversed. And in weighing your decision, Your Honors, we ask that you look at four specific areas of the record. The first area, Your Honor, would be the testimony of the respondent, Mr. Chaffers himself. Mr. Chaffers was an employee at Jeffboat from 2005 to 2017, so a period of about 12 years. He worked as a painter and later as a paint inspector. When he was laid off in early 2017, he was laid off as a result of a reduction in force. Jeffboat is, or was, a shipyard in Jeffersonville, Indiana, which is right across the Ohio River from Louisville, Kentucky. Jeffboat was eventually shuttered, and Mr. Chaffers was part of a large group of employees that were laid off as a consequence. Shortly after his layoff, unrelated to this case, Mr. Chaffers had another claim for disability. He filed a claim under the Social Security Disability Act before the Social Security Administration, and he asserted that he was disabled for essentially three reasons. One, for HIV, two, for lupus, and three, for chronic pain associated with neck and back problems. Specifically with respect to this disability before the Social Security, which the Social Security Administration awarded, he complained primarily of shortness of breath, of lethargy, of getting tired very easily, including things such as climbing stairs, complained of a cough, a lot of things which were the symptoms that he based his claim later in that year, 2017, when his claim was made for longshore benefits. Now his claim for longshore benefits was predicated on an assertion that he was exposed to some form of dangerous conditions of his employment, which led to a pulmonary condition. Now Mr. Chaffers, again, these are all uncontroverted facts, will tell you that throughout his period at Jeff Boat, he had many, many tests, passed all of them, that Jeff Boat was a union shop, he had every opportunity to complain to union reps or management, and never did so with respect to any pulmonary issues. Furthermore, right before his claim and for about a period of three years after, he treated with several physicians in the greater Louisville, the southern Indiana area, and there were no diagnoses of any pulmonary problems, certainly none that were related to work or conditions of employment, and no doctor disabled him. He'll readily admit that he had a litany of other health problems, and if you'll bear with me... Should we move to the expert? Yes, ma'am. Again, we would ask you to carefully review his records because he admits these other various ailments which contributed to the same symptomatology. And so the ALJ did have an opportunity to review those records as far as the treating physicians? You're absolutely correct, Your Honor. And those physicians, again, there were three of them, none of them made any diagnosis of any work-related, and in fact, with respect to all three of them, there were no reports of any work-related symptomatology. So Judge Pryor, you've asked about the experts. The first two, if I may, areas of the record are Mr. Chaffer's testimony himself and the actual treating physicians and the diagnostic imaging and other tests. Again, one and two, those two elements, there's simply no evidence, no basis for a finding of disability. The experts, however, do address disability. The expert which the defense retained was a doctor by the name of William Frazier, a very well-credentialed pulmonologist with over 35 years of practice, thousands of patients, tens of thousands of reviews of the types of tests and imaging that are used in pulmonological cases. Now, Dr. Frazier confirmed that there was no, in any of these diagnostic tests, PFTs, pulmonary function tests, there's no evidence of inability to inhale or exhale. There was likewise in terms of total lung capacity, it was viewed as normal. After looking at this record as a whole, Dr. Frazier opined that there was no diagnosable lung disease or condition at all, and as a consequence, there was certainly not a diagnosable disease or condition which could be considered work-related or disabling. Did he acknowledge, though, that some of those paint or chemicals could cause lung problems? Your Honor, you're absolutely correct. Hypothetically, there is medical literature, or excuse me, at least literature to suggest that, but that actually is apropos of turning to the second papers, the actual medical record of treating physicians and diagnostic tests, and Dr. Frazier. All three of those in the record not only fail to support a finding of disability or any compensable disease or medical condition, but in fact they support the defense argument. So the fourth and final, and to your point, Your Honor, would be the respondent's expert, which was a doctor by the name of Gupta. Dr. Gupta is a practitioner in Connecticut, where Respondent's Council is located. Dr. Gupta never met Mr. Chaffers. There was no physician-patient relationship established. He never had any clinical exam. He only reviewed records, and he based his opinion essentially exclusively on the subjective complaints of Mr. Chaffers. In fact, Dr. Gupta agreed with some of the treaters, and certainly Dr. Frazier, that the PFT tests were essentially normal, no difficulty in inhaling and exhaling. You're saying essentially normal, counsel, but didn't even your expert acknowledge that there was at least one abnormal pulmonary test? Yes, that is fair, Judge. One item of a pulmonary, of the PFT, which contains multiple parts. But having said that, examining it whole, Dr. Frazier was emphatic that you look at the spectrometry and you look at the total lung capacity, what he referred to as the gold standards, and both of these were normal, and multiple tests, not just one test. In fact, he reviewed more tests than Dr. Gupta had access to. Even Dr. Gupta agreed that those tests were normal, and those results were normal. Dr. Gupta also agreed that there was no interstitial lung disease, and we can discuss that in detail if the court cares to, but that's an important distinction because that's actual damage to the tissue of the lungs. Dr. Gupta, the treating providers, and Dr. Frazier, again, there's no evidence except for the fact that there was no interstitial lung disease. Again, no damage to the tissue of the lungs that you would see in a traditional work-related pulmonary claim for exposure to chemical irritants or asbestosis or silicosis or the like. Having said that, Dr. Gupta came up with a vague diagnosis of restrictive lung disease, which again essentially just says he, based upon subjective symptoms, has difficulty breathing, he coughs on occasion, and he admitted that all those other factors, the lupus, the obesity, the HIV, the allergy problems, all could cause the same symptomatology. Again, Your Honor, looking at the record as a whole and those four factors, three of them support the defense, and the only one which supports respectfully the ruling of the Administrative Law Judge affirmed by the Benefits Review Board is the expert opinion of Dr. Gupta, a paid expert without any patient-doctor relationship who relied essentially on subjective complaints with a plethora of actual objective medical evidence, which was contrary to his opinion. Your Honor, based upon that, we would submit that that results in manifest error. That's clearly erroneous and it merits a reversal of that decision. I'll reserve the majority of my time for rebuttal, but Your Honor, if the Court has any questions, I'll certainly entertain them, and I'll reiterate that the same symptomatology, the same subjective complaints that Mr. Chaffers used to obtain Social Security disability benefits, which he blamed on other medical conditions, were presented in this case for a basis for an award of workers' compensation benefits, again, despite an absence of any conditions of employment causing or contributing to them. And are you saying, counsel, that that receipt of SSI benefits and the claims made in that process somehow make Chaffers ineligible for relief here, or are you simply saying it's part of what we should look at when we consider the case as a whole? The latter, Judge Kohler. You're absolutely correct. Individuals, if they qualify, are entitled to Social Security disability. Individuals, if they qualify, are entitled to federal workers' compensation benefits. Those benefit schemes are not mutually exclusive. However, as you pointed out, Your Honor, when examining whether or not Mr. Chaffers was properly awarded these longshore benefits, it is fair to consider that he made a claim for the exact same symptoms, exact same problems, based upon a whole other set of facts and a whole other set of medical conditions which unequivocally are unequal. Counsel, I'd like you to address the aggravation rule, right, because I understand what you're saying. Mr. Chaffers was exposed to long irritants, right? He testified about the safety data sheets of the materials that he used. I don't think that testimony was rebutted by your client. So I'm interested in, yes, he had these underlying medical conditions, but the test is aggravation. No, did it contribute? So how do you cut through that body of law? I'll try to very briefly, Judge Maldonado. First and foremost, this was not an aggravation case. This was an exposure case. They weren't saying that he had a pre-existing condition which was aggravated or exacerbated. This is a situation where it was pled and argued that these conditions of employment caused or contributed to a disabling condition. So the aggravation doctrine, I would respectively argue is... If you'd like me to address... That's my legal response, Your Honor. With respect to the factual response, this was admittedly an administrative proceeding. Our formal hearings, we call them trials, but we're not bound by the federal rules of evidence. Those are used as a guide. The material data or safety data sheets to which you refer were items which were pulled off the internet by Mr. Chaffers. He readily admitted as such. There was no expert which linked any specific material or chemical at all. There was no... None of the doctors. In fact, Dr. Gupta conceded, he can't tell you what made him sick. He's just relying on the fact that the guy told him he was sick. So to the extent that those were a part of the record, I will concede that. But to the extent they were given any significant amount of weight, I would suggest that that was error. All right. No additional questions. Save the remainder for rebuttal. Thank you very much, Your Honors. Thank you. Good morning, Your Honors. I want just first to thank the court for allowing me to participate virtually. I think that the court has hit on a few of the important facts and also law in this matter. It's well established that the Longshore Act is to be applied liberally. It's a humanitarian act, and it's to protect the maritime workers. And in keeping with that purpose, it is accurate that the law is well established that you don't need to necessarily cause the injury with regard to an occupational disease. It is sufficient if the exposures contribute, accelerate, hasten, or in some way aggravate a pre-existing condition. Ms. Long, could you address the concern raised by Judge Maldonado in regards to whether or not the aggravation rule needs to be pled? Your Honor, there is no pleading requirement that I'm aware of, and it would be almost contrary to the humanitarian effort of the Act to require a claimant to, you know, plead specifically whether it's contributing, hastening, accelerating, or whatnot. So there is no pleading rule that I am aware of that requires that level of specificity. In fact, if you look at the law with regard to the presumption, all you need to do as a claimant is to plead that, sorry, of the 928 presumption. You just need to plead a harm and a working condition that existed that could have caused or aggravated the harm. Also, to the Court's question, it doesn't need to be the sole factor of the occupational disease. It doesn't need to be something that didn't combine with something else. So the fact that Mr. Chaffer's had other, you know, health ailments is insignificant. It doesn't matter for purposes of the Longshore Act. Also, with regard to Social Security disability, as the Court, I'm sure, is aware, there are a variety of medical issues that the Social Security Court would look at, and they look at the record and the medical evidence as a whole. So even though a claimant might, you know, allege a certain medical disease as the cause of their disability, Social Security would award it based on the entire record and the evidence. What I think is most important in this case is to note that the Board, the BRB, and this Court, the scope of review of the trier of fact is for substantial evidence consistent with the governing law. This Court and the BRB is not tasked with the task of reweighing the evidence, resolving any inconsistency, making any credibility determinations. That is the job of the ALJ, the trier of fact, who, the law is clear, is best able to weigh all that evidence and make a decision. And that's exactly what Judge DeMeo did here. He looked at the evidence, including all the medical records, listened to the testimony, which was uncontroverted by my client, his exposure. There was no dispute that he was exposed to horrible lung irritants, including various oil-based paints, epoxy, sealants, paint thinner that was put into the paint sprayer, antifreeze that was put into the paints in order to make it run in colder weather. He was also exposed to welding fumes. He was exposed to sandblasting dust. He went into contained compartments of the barge, unprotected, in order to inspect, in order to keep the production line going. So Jeff Wilt never disputed the fact that my client had significant, inadequately protected exposure to lung irritants. The other thing I would add is that those, that my client was responsible for a period of time of ordering the paint. So he knew what paints were used in painting barges. And the safety data sheets of those paints were produced by Jeff Boat. All of them, not all of them, I shouldn't say that, most of them, some of them are labeled as lung irritants. So it's not disputed that he had inadequately protected continuous exposure to his lungs. So, again, the judge made his decision. He weighed the evidence. He listened to both the medical experts in this case. And he also reviewed all of my client's medical records, which were produced at trial. And in looking at that, he decided, and he very well articulated his reasoning for crediting Dr. Gupta's opinion over that of Dr. Fraser. And, again, I think the court hit on it precisely, that he found him to be more convincing and more credible based on his review. Now, I should point out, Dr. Gupta is not necessarily a paid expert who's used over and over again, as Dr. Fraser is, who has a history and is out there as an expert. Dr. Gupta has testified in a handful of cases. He practices near our shipyard, which is Electric Boat. He treats multiple patients who are exposed to maritime substances that are used in building submarines. He looked over his medical records. He talked with him on the phone and he noted, no, his pulmonary function tests aren't normal. He's got reduced diffusion capacity on all of that, significantly reduced. And his total lung capacity, which was pointed out and acknowledged by Dr. Fraser, is also not normal. He doesn't have normal CT scans, which show the beginning of a fibrotic process. He looked at all of those and he noted that Mr. Chaffer's has restrictive lung disease and also has emphysema, which is COPD, on his CT scan. And he happens to fall into the category of someone who has emphysema on a CT scan, but it doesn't show it on his FVC and FVC1. All of Mr. Chaffer's physicians note lung disease. However, they are contrary in what they say it, you know, what it is. And it is not necessary, contrary to the assertion of Jeff Boat, that a provider disable a client or a patient in order for that patient to receive Longshore benefits. If that were the case, we wouldn't be able to get benefits from most of our clients because most treaters want nothing to do with lawyers to be blunt. And it's more difficult than it ever is to even get the records from physicians. So if we were required, I mean, it's like a needle in a haystack when we do find a treater who's willing to be deposed and to write a report based on linking on occupational exposures to lung disease. I know you can't see the courtroom, Ms. Simona, but I don't know if every lawyer in here doesn't think their doctor likes them. I'm not saying my doctors don't like us. However, they tend to dodge us, you know, when we say, you know, will you give your opinion that we might get that opinion, but we're not going to get a deposition. Trust me, they, you know, they want nothing to do with, with coming into court and linking that, you know, it's quite often that we have to get an occupational disease doctor. But in this case, Dr. Gupta was able to look at the records, was able to talk with Mr. Chaffers, and he actually did look at the CT scan and determined that no, his pulmonary function tests are not normal. His symptoms, he has symptoms. And quite frankly, those symptoms and his testimony is enough to get him the presumption under 920A. And that allows the judge to do the weighing component of the, under the Longshore Act, in which the judge in this case wrote a very good decision. He looked at everything completely. He linked the testimony of the client with the report of Dr. Gupta. And he found that the record was replete, it was full with uncontroverted evidence that Mr. Chaffers was exposed to paint fumes, particles, sandblasting dust, and all sorts of other lung irritants. And based on that, he weighed the, the testimony of both Dr. Frazier and Dr. Gupta and found Dr. Gupta to be more credible. He also noted, yes, that I think the court brought that up as well. Dr. Frazier acknowledged that exposure to these types of lung irritants can cause and do cause lung disease, restrictive lung disease, sometimes fibrosis and COPD and emphysema. And the laws, not the law, the scientific evidence is now quite clear. And literature has come out since this decision that 14 to 15% of COPD is caused by occupational exposures. It's not just smoking, as a lot of people assume. So I think the most important thing is that the scope of this court is limited to review the record, not to reweigh the facts, which Jeff Boak continually requests that the court do. It's similar to the BRB. The record is the record. The facts were determined by the trier of fact who was best able to determine credibility and to make the decision based on the evaluation of the evidence at hand. It was Dr. I mean, it was Judge DeMeo's scope of hit. It was his job actually as a trier of fact to review the evidence. It was his job to determine credibility and it was supported by substantial evidence as determined by the benefit review board and the decision must stand. This court is not in the position as the appellant would have you believe to reweigh the evidence, to reconsider both decisions, to look at the specifics of the medical records. That's been already done by Judge DeMeo. And for that reason, I believe that the decision should stand. Thank you. Did you want to address briefly the concern regarding attorney's fees and whether or not the director might have missed a few of the overcharges? No, Your Honor. That's fine. I stand by my brief. All right. Thank you. Mr. Marks, any rebuttal? Yes, Your Honor. All right. Your Honor, if I may. First, Ms. Simone referenced the liberal construction that the Longshore Act is to be afforded. Uncle, I yield. I have practiced nearly 30 years in Longshore. It is a liberal act. It was established in 1927. If anyone wants to have a cup of coffee about getting the Congress to amend it, I'd be happy to entertain it. But having said that, this case presents an exception. I'm used to fighting with one hand behind my back on that. In this particular instance, despite the liberal construction, the record shows that Mr. Chaffer should not have been awarded benefits. Ms. Simone also talked about the presumption under the act. I'll yield to that as well. The 20A presumption was established, as Judge DeMaio and the BRB acknowledged. They also acknowledged that we rebutted that. So we're right back to a standard that we're all familiar with in district court, and that's just a simply weighing of the facts. And so the burden remains with Mr. Chaffer's. With respect to the actual illness itself, again, contrary to what Ms. Simone said, Dr. Gupta testified very clearly that he agreed with Dr. Frazier that there was no CPOD and that there was also no pulmonary fibrosis. He also agreed that there was no interstitial lung disease. And at the risk of repetition, that's very important. Interstitial lung disease, interstitial means intervening. It's the actual tissue. Our lungs are comprised of tissue and then little pockets, little sacks of air that we all rely upon. When you have a typical disease or damage to the lungs that's employment-rooted, there's damage to that tissue. It's undisputed. And there was no damage to the tissue. So what we're relying upon are subjective complaints of limitations in breathing. So, again, I would re-urge the court that when we're talking about the record as a whole, if we look at the medical evidence, it supports the defense on this. If we look at Mr. Chaffer's own testimony, it supports the defense on this. Dr. Frazier's interpretation, which obviously I support and believe in this federal... I notice that we're out of time. If you could wrap up. Thank you very much. Thank you. Your Honor, again, we pray for a reversal and a finding that Jeff Bode and Alma should not be liable for permanent partial disability or medical benefits under the Long-Track. Thank you very much for your time. Thank you. Thank you to both counsel. Thank you, Your Honor.